BAUDOUINE v. GRIMES ET AL.

1. **Agent:** POWER OF TO BIND PRINCIPAL AFTER DISCHARGE: FACTS CONSIDERED. The doctrine that a discharged agent may, under some circumstances, bind his former principal to the extent of the authority with which he had been apparently clothed, has no application beyond the claim of authority made by the agent. Accordingly, where an agent of plaintiff, after his discharge, which was unknown to defendant, represented that he had authority to draw upon his principal, but not that he had authority to procure an accommodation indorser, *held* that the principal was not bound to indemnify defendant for indorsing the discharged agent's draft, which the principal refused to pay, notwithstanding the principal had honored several other drafts drawn by the agent before his discharge, and indorsed by the defendant.

*Appeal from Des Moines Circuit Court.*

THURSDAY, SEPTEMBER 18.

THE plaintiff, A. Baudouine, is a merchant doing business in the city of New York. As such, he sold and delivered

goods to the defendant, W. D. Grimes, of Burlington, Iowa, doing business under the name of W. D. Grimes & Co. This action is brought on account for goods thus sold and delivered. To the account the defendant pleaded a counter-claim. The controversy arises upon the question as to the validity of the counter-claim. There was a trial to the court, and the counter-claim was allowed, and judgment rendered accordingly. The plaintiff appeals.

*Hall & Huston*, for appellant.

*P. Henry Smythe & Son*, for appellee.

ADAMS, J.—The counter-claim is for certain money paid by reason of a certain indorsement alleged to have been made by defendant for the accommodation of the plaintiff and at his request. The indorsement was, in fact, made at the request of one Rowland, who had been a traveling salesman for the plaintiff, and was not made at the request of the plaintiff, nor did he receive any benefit therefrom. The defendant contends, however, that, while this may be so, he had reason to suppose that Rowland was still the plaintiff's traveling salesman, and had reason to suppose that Rowland was authorized by the plaintiff to apply to him for the accommodation indorsement in question.

The facts, stated more in detail, are as follows: The indorsement in question was procured in August, 1883. Prior to that time Rowland had on different occasions called on the defendant, at his place of business in Burlington, as the plaintiff's traveling salesman, and had sold the defendant goods. Twice, while in Burlington, he had drawn on his principal for expenses, and had been able to raise the money on the drafts at Burlington on the defendant's credit as an accommodation indorser. It does not appear that Rowland was authorized to raise money in this way, but the plaintiff nevertheless paid the drafts, and made no objection. In July, 1883, Rowland was discharged by the plaintiff for irregular-

ities.   A few days later, Rowland appeared in Burlington and conceived the plan of raising money for his personal use in the same manner as he had theretofore raised money for the plaintiff's use.   He accordingly went to the defendant, holding himself out as still traveling salesman for the plaintiff, and asked him to indorse another draft.   ' This time he desired to raise four hundred dollars.   The other drafts had been for one hundred dollars each.   As an excuse for drawing so large a draft, he represented that he was on his way to California and needed that amount.   The defendant, supposing that Rowland was acting in good faith and under authority from the plaintiff, indorsed the draft, and the same was cashed by one of the banks in Burlington.   When the draft was presented for payment to the plaintiff as drawee, he refused to pay it, and the defendant was accordingly obliged to pay it as indorser.

As to whether the previous payment of two drafts for one hundred dollars each was any evidence that Rowland was clothed with apparent authority to draw for four hundred dollars, is a question which, to our minds, admits of great doubt.   ' Four hundred dollars was an extraordinary amount for expenses, as estimated by the standard of the former amount drawn for; and, as to the extraordinary circumstances the defendant had no evidence except Rowland's own statement.   But we do not feel called upon to determine whether Rowland had been clothed with apparent authority to draw such a draft.   If we should concede that he had been, we should still have to inquire whether he had been clothed with apparent authority to procure an accommodation indorser. The defendant's claim rests upon the theory that Rowland, as the plaintiff's agent, agreed, either expressly or by implication, that the plaintiff would reimburse the defendant, and held himself out as having authority to so agree.   But we fail to find any evidence whatever that Rowland held himself out as having authority to procure the defendant, or any one else, as an accommodation indorser for the plaintiff.   The

most that he represented was that the plaintiff authorized him to draw on him. It looks, indeed, as if Rowland expected at first simply to draw in favor of the bank, and get his money without an indorser. The defendant in his testimony says: "I went to the bank with Mr. Rowland to get this money to pay his expenses, and he asked me to indorse for him." Rowland did not pretend that the laintiff directed him to ask the defendant to indorse for him. It is true that the plaintiff had paid two former drafts. But that was only evidence of authority to draw, and that, it seems, is all the authority that Rowland pretended to have. There is certainly nothing in the evidence inconsistent with the idea that Rowland's request was a mere personal request, and was so understood. The defendant relied with confidence upon Rowland's authority to draw, and the plaintiff's consequent obligation, and his ability and disposition to discharge it. Beyond that it is not probable that he gave the matter much thought.

The doctrine that a discharged agent may, under some circumstances, bind his former principal to the extent of the authority with which he had been apparently clothed, has no application beyond the claims of the agent. We think that the judgment must be

REVERSED.